IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

JAMES A. HALSEY,                    )
                                    )
             Plaintiff,             )
                                    )
v.                                  )          CIVIL ACTION NO. 1:09-01028
                                    )
MICHAEL J. ASTRUE,                  )
Commissioner of Social Security,    )
                                    )
             Defendant.             )

**M E M O R A N D U M   O P I N I O N**

This is an action seeking review of the decision of the Commissioner of Social Security denying

Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI),

under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 40 - 433, 1381-1383f. This case is

presently pending before the Court on the parties' cross-Motions for Judgment on the Pleadings

(Document Nos. 16 and 20.) and Plaintiff's Reply. (Document No. 21.) Both parties have consented in

writing to a decision by the United States Magistrate Judge. (Document Nos. 4 and 5.).

The Plaintiff, James A. Halsey (hereinafter referred to as "Claimant"), filed applications for DIB

and SSI on July 24, 2007, alleging disability as of January 11, 2005, due to chronic back pain, muscle

spasms, right leg pain, bilateral knee problems, bones in left leg are deteriorating, laceration to head,

history of alcohol and drug use, nerves, stress, anxiety, high blood pressure, and Hepatitis C. (Tr. at 10,

81, 86, 96, 99, 140-41, 143-44, 172.) The claims were denied initially and upon reconsideration. (Tr. at

81-83, 86-88, 96-98, 99-101) On July 9, 2008, Claimant requested a hearing before an Administrative

Law Judge (ALJ). (Tr. at 102-04.) The administrative hearing was held on February 3, 2009, before the

Honorable Geraldine H. Page. (Tr. at 27-58.) By decision dated March 9, 2009, the ALJ determined that

Claimant was not entitled to benefits. (Tr. at 10-26.) The ALJ's decision became the final decision of the

Commissioner on July 30, 2009, when the Appeals Council denied Claimant's request for review. (Tr. at 1-4.) On September 24, 2009, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2008). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2008). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work

2

experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that

this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir.

1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow

a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and

416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings

to determine whether the claimant has a medically determinable mental impairment and documents its

findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents

the degree of functional limitation resulting from the impairment according to criteria as specified in 20

C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> (C) *Rating the degree of functional limitation.* (1)Assessment of functional
> limitations is a complex and highly individualized process that requires us to consider
> multiple issues and all relevant evidence to obtain a longitudinal picture of your overall
> degree of functional limitation. We will consider all relevant and available clinical signs
> and laboratory findings, the effects of your symptoms, and how your functioning may
> be affected by factors including, but not limited to, chronic mental disorders, structured
> settings, medication and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to
> which your impairment(s) interferes with your ability to function independently,
> appropriately, effectively, and on a sustained basis. Thus, we will consider such factors
> as the quality and level of your overall functional performance, any episodic limitations,
> the amount of supervision or assistance you require, and the settings in which you are
> able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix
> 1 to this subpart for more information about the factors we consider when we rate the
> degree of your functional limitation.
>
> (3) We have identified four broad functional areas in which we will rate the
> degree of your functional limitation: Activities of daily living; social functioning;
> concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the
> Listings of Impairments.
>
> (4) When we rate the degree of limitation in the first three functional areas
> (activities of daily living, social functioning; and concentration, persistence, or pace), we
> will use the following five-point scale: None, mild, moderate, marked, and extreme.
> When we rate the degree of limitation in the fourth functional area (episodes of
> decompensation), we will use the following four-point scale: None, one or two, three,
> four or more. The last point on each scale represents a degree of limitation that is
> incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[1] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision

---

[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date, March 31, 2006. (Tr. at 13 and 25, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from a medically determinable physical impairment relating to his back, which was a severe impairment.[2] (Tr. at 17 and 25, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 17 and 25, Finding No. 3.) The ALJ then found that Claimant had a residual functional capacity to perform work a range of work at the light level of exertion, as follows:

> [C]laimant has retained the residual functional capacity to lift and/or carry up to 20 pounds occasionally and 10 pounds frequently throughout the workday. He can stand and/or walk up to six hours during an eight hour workday, and sit up to six hours. Normal work-day breaks will accommodate any need he has for change of position. He will not need to lie down during the workday. He should not be exposed to extremes of cold temperatures, or to hazardous machinery, vibrating surfaces, unprotected heights, and should not climb ladders, ropes, or scaffolding. He should avoid any crawling, but can occasionally climb ramps and stairs, balance, kneel, stoop, and crouch, and perform activities that involve no more than occasional interaction with the general public. His mental impairments limit him to the simple, routine, repetitive job tasks of unskilled work.

(Tr. at 23 and 25-26, Finding No. 5.) At step four, the ALJ found that Claimant could not return to his past relevant work. (Tr. at 24 and 26, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform work as a

---

[2] The ALJ also finds that Claimant suffers from medically determined mental impairments, including depressive disorder and anxiety disorder. (Tr. at 18.) The ALJ however, does not state specifically that such impairments are severe in nature.

fast food worker, cashier, and parking lot attendant, at the light level of exertion. (Tr. at 24 and 26, Finding No. 8.) On this basis, benefits were denied. (Tr. at 25 and 26, Finding No. 9.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on June 28, 1963, and was 4 years old at the time of the administrative hearing, February 3, 2009. (Tr. at 10, 140, .) Claimant had a high school education and was able to communicate in English. (Tr. at 13, 26, 179.) In the past, he worked as a an automobile dealership service manager, service writer, textile machine operator, and as a mortgage broker in a loan office. (Tr. at 13, 161-65, 173-74.)

 The Medical Record

 The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

 Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in assessing Claimant's physical and mental RFC. (Document No. 17 at 4-13.) Claimant also alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in assessing Claimant's credibility. (Id. at 13-15.) In response, the Commissioner asserts that Claimant's arguments are without merit and that substantial evidence supports the ALJ's decision. (Document No. 20 at 9-14.)

Analysis.

1. RFC.

 Claimant first alleges that the ALJ erred in assessing Claimant's physical and mental RFC. (Document No. 17 at 4-13.) "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record," including " the effects of treatment" and the "limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication." Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2008). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has

a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

Opinions on a claimant's Residual Functional Capacity are issues that are reserved to the Commissioner. The Regulations state that:

> We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to subpart P of part 404 of this chapter, your residual functional capacity . . . or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner.

See 20 C.F.R. § 416.927(e)(2) (2008).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do.  That is, the SSA need not accept only physicians' opinions.  In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

The Regulations state that opinions on these issues are not medical opinions as described in the Regulation dealing with opinion evidence (20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2)); rather, they are opinions on issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e) and 416.927(e). For that reason, the Regulations make clear that "[w]e will not give any special significance to the source of an opinion on issues reserved to the Commissioner. . . ." Id. §§ 404.1527(e)(3) and 416.927(e)(3). The Regulations further provide that "[f]or cases at the Administrative Law Judge hearing or Appeals Council level, the responsibility for deciding your residual functional capacity rests with the Administrative Law Judge or Appeals Council." See 20 C.F.R. §§ 404.1545 and 416.946 (2008). However, the adjudicator must still apply the applicable factors in 20 C.F.R. § 416.927(d) when evaluating the opinions of medical

sources on issues reserved to the Commissioner. <u>See</u> Social Securing Ruling ("SSR") 96-5p, 61 FR 34471, 34473 (1996).

Social Security Ruling 96-5p makes a distinction between an RFC assessment, which is "the adjudicator's ultimate finding of 'what you can still do despite your limitations,'" and a "'medical source statement,' which is a 'statement about what you can still do despite your impairment(s)' made by an individual's medical source and based on that source's own medical findings." <u>Id.</u> SSR 96-5p states that "[a] medical source statement is evidence that is submitted to SSA by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s)." Adjudicators "must weigh medical source statements under the rules set out in 20 C.F.R. § 416.927, providing appropriate explanations for accepting or rejecting such opinions." <u>Id.</u> at 34474.

Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2008). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." <u>Id.</u> §§ 404.1527(d)(2) and 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more

weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Unless the ALJ gives controlling weight to a treating source's opinion, the ALJ must explain in the decision the weight given to the opinions of state agency psychological consultants. 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) (2008). The ALJ, however, is not bound by any findings made by state agency medical or psychological consultants and the ultimate determination of disability is reserved to the ALJ. Id. §§ 404.1527(f)(2)(I) and 416.927(f)(2)(I).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2008). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2008). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2008). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the Court must not abdicate

its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6).

A. Physical.

Claimant alleges that in assessing his physical RFC, the ALJ erred in not adopting the functional findings and physical RFC assessed by his treating physician, Dr. Carlson. (Document No. 17 at 6-9.) Claimant notes that Dr. Carlson was the only treating and evaluating expert, who specifically addressed Claimant's RFC. (Id. at 6.) He asserts that the ALJ committed two errors in discounting Dr. Carlson's opinions. (Id. at 7-9.) First, Claimant alleges that the ALJ "was flatly wrong in expecting to find the same type of information in treatment notes and disability evaluations." (Id. at 7.) "Despite whatever the ALJ may have 'expected to see' in one report or another, the fact remains that Dr. Carlson's physical findings and diagnoses were consistent, and it was impossible to point to any discrepancies that might undermine his conclusions as to [Claimant's] residual functional capacity." (Id.)

Second, Claimant alleges that the ALJ's fear of bias that a treating physician might bring to a disability evaluation was unfounded and contrary to the law. (Id. at 7-9.) Pursuant to SSR 96-2p, Claimant asserts that to be given controlling weight, an opinion must be from a treating source, address the nature and severity of the claims, be supported by medically acceptable clinical and laboratory diagnosis techniques, and not be inconsistent with other substantial evidence of record. (Id.) Regarding Dr. Carlson's opinions, Claimant asserts that he had begun a treating relationship with Claimant and had "amassed a wealth of information." (Id. at 8.) Claimant points out that neither Dr. Bouhkemis nor Dr. Gomez had the benefit of Dr. Carlson's comprehensive RFC evaluation when they rendered their

11

opinions. (<u>Id.</u> at 9.)

In response, the Commissioner asserts that the ALJ was not bound by Dr. Carlson's finding of disability because it was not supported by the record, including Dr. Carlson's own examination findings. (Document No. 20 at 9.) The Commissioner notes that treatment notes from Dr. Jones from January 2005, through August 2007, primarily reflected overall good range of motion and normal strength throughout, despite Claimant's complaints of back pain and anxiety. (<u>Id.</u> at 10.) In August 2007, Dr. Jones opined that Claimant's prognosis was good and failed to identify any employment limitations. (<u>Id.</u>) Dr. Carlson's treatment notes from October 2008 through December 2008, reflected that Claimant walked with a good gait, had good strength in his lower extremities, and was treated conservatively with medication. (<u>Id.</u>) Furthermore, the two state agency expert opinions indicated that Claimant was capable of performing work at the light level of exertion with specific limitations. (<u>Id.</u> at 11.) One of the experts opined that Claimant's symptomatology was somewhat exaggerated. (<u>Id.</u>) The Commissioner therefore asserts that the ALJ more than accounted for Claimant's work-related physical complaints that were supported by the record with his specific RFC limitations. (<u>Id.</u>) Consequently, the Commissioner contends that the ALJ's physical RFC assessment is supported by substantial evidence. (<u>Id.</u> at 11-12.)

In Reply, Claimant asserts that though the Commissioner asserts that Dr. Carlson's RFC assessment was inconsistent with his treatment notes, neither the decision nor the Commissioner's brief identify "even <u>one</u> inconsistency." (Document No. 21 at 1.) Claimant asserts that the Commissioner addressed only the perceived inconsistencies, and failed to address the possible biases that a treating physician may bring to a disability examination. (<u>Id.</u> at 1-2.) Regarding the Commissioner's assessment of Dr. Jones's medical treatment, Claimant asserts that it was inadequate and nearsighted in that he concentrated only on findings of good range of motion and strength, out of two years of treatment notes. (<u>Id.</u> at 2.) Claimant asserts that it "is meaningless to point to positive statements or a hopeful prognosis

and ignore the critical, underlying diagnosis." (Id.)

The medical evidence reveals that Claimant first injured his back in the 1980's in a water skiing accident. (Tr. at 13.) As a result of the accident, Claimant underwent surgical laminectomy, diskectomy, and fusion to repair lumbar herniation. (Tr. at 13, 489.) Approximately ten years later, Claimant had problems due to bone spur at the surgical site, which was surgically removed. (Id.) He re-injured his back in 2002, doing yard work. (Id.) A May 8, 2002, MRI revealed decreased height and loss of water signal at L4-5 and L5-S1. (Tr. at 13, 493.) There was some mild impression on the right anterloateral aspect of the thecal sac at L4-5. (Id.) It was noted that it "would be difficult to rule out a very small recurrent disk with reactive change." (Id.)

Claimant treated with Dr. Vincent K. Jones, M.D., from January 18, 2005, through August 6, 2007. (Tr. at 13, 264-335.) On January 18, 2005, Claimant complained of an increased stress level due to the loss of his job, which resulted in financial problems for his family. (Tr. at 13, 326.) He also complained of continued severe back pain. (Id.) On physical exam, Dr. Jones noted overall good range of motion, normal motor strength, intact sensation, and decreased range of lumbar spine motion. (Tr. at 13, 327.) He assessed chronic back pain, anxiety disorder, chronic non-malignant pain, and adjustment disorder. (Id.) Dr. Jones prescribed Lorcet and Xanax. (Id.) On February 15, 2005, Claimant returned for a follow-up and reported that he was not doing well as he had lost his job. (Tr. at 13, 324.) Physical findings on exam remained the same, as did the diagnoses, with the additional diagnoses of hypertension and obesity. (Tr. at 13, 325.) On March 18, 2005, Claimant described his back pain as severe, achy, and throbbing in nature, which was made worse upon rising and at bed time. (Tr. at 13, 322.) He also reported that the pain was worse with physical activity and though constant, was made better with medication. (Id.) Dr. Jones's findings and assessment remained constant. (Tr. at 13, 323.) Claimant continued to see Dr. Jones about once every month. (Tr. at 264-321.) Throughout 2005, Claimant's

complaints and Dr. Jones's assessments remained primarily the same, with the exception of a diagnoses of Hepatitis C on June 15, 2005; insomnia on July 13, 2005; and tendonitis of the right wrist on August 12, 2005. (Tr. at 13, 312-17.)

Claimant complained of increased anxiety for several weeks on May 15, 2006. (Tr. at 13-14, 294-95.) He also complained of throbbing back pain. (Id.) Dr. Jones assessed back pain, anxiety disorder, and osteoarthritis, and continued him on his medications. (Tr. at 13-14, 295.) On March 7, 2007, Dr. Jones assessed muscle spasms, though his treatment notes do not reflect any reports from Claimant or medical findings of such spasms. (Tr. at 13-14, 274-75.) On May 8, 2007, Claimant reported that the back pain was worse with walking, upon rising, and with physical activity. (Tr. at 13-14, 270.) Findings on physical exam remained the same, as did Dr. Jones's assessment and treatment. (Tr. at 13-14, 270-71.) Finally, on August 6, 2007, Claimant complained of throbbing back pain, which was worse upon rising and with physical activity. (Tr. at 13, 264.) Claimant reported that the pain was constant, but relieved with medication, such as Lorcet. (Id.) Physical exam revealed overall good range of motion, normal motor strength throughout, intact sensation, and point tenderness at the lumbar spine. (Id.) Dr. Jones assessed back pain, hypertension, and anxiety disorder. (Tr. at 13, 265.)

In August 2007, Dr. Omar Kassim, M.D., completed a form General Physical Report as requested by the West Virginia Department of Health and Human Resources ("WV DHHR") in connection with Claimant's request for a medical card. (Tr. at 14, 336-38.) Dr. Kassim noted that Claimant walked slowly and stiffly, could not heel or toe walk, and had much difficulty with tandem walking. (Tr. at 14, 336.) He reported that Claimant had no gross orthopedic abnormalities, but had diminished right grip strength. (Tr. at 14, 337.) Dr. Kassim noted Claimant's lower back and left knee pain, and assessed a major diagnosis of chronic back pain status-post two surgeries. (Id.) Minor diagnoses included hypertension, hepatitis C, depression, and anxiety. (Id.) He opined that due to Claimant's back pain and nerves, per

14

Claimant, he was unable to perform either his past relevant work or any other full time work. (Id.) He noted that Claimant should essentially avoid lifting and should be referred for vocational rehabilitation. (Tr. at 14, 337-38.) The ALJ accorded little weight to Dr. Kassim's opinion because it was made after only a brief physical examination and concerned a decision reserved to the Commissioner. (Tr. at 24.)

On September 28, 2007, Dr. Rabah Bouhkemis, M.D., completed a form Physical RFC Assessment. (Tr. at 352-59.) Dr. Bouhkemis opined that Claimant's failed back syndrome and neck pain did not prevent him from performing light exertional level work with occasional postural limitations including climbing ramps, stairs, ladders, ropes, and scaffolds; kneeling, crouching, or crawling; and frequent balancing and stooping. (Tr. at 353-54.) He noted that Claimant had a failed back with residual pain, discomfort, and deficits in the range of spinal motion. (Tr. at 353.) Dr. Bouhkemis additionally opined that Claimant should avoid concentrated exposure to extreme cold, wetness, humidity, vibration, and hazards. (Tr. at 356.) He opined that Claimant's symptomatology was "somewhat exaggerated. This is not to say that the pain is not real to the [C]laimant." (Tr. at 357.)

Dr. A. Rafael Gomez, M.D., completed a further form Physical RFC Assessment on April 25, 2008. (Tr. at 431-38.) He opined that Claimant's status-post laminectomy, twice and failed back syndrome, did not prevent Claimant from performing light exertional level work. (Tr. at 431-32.) He assessed occasional postural limitations, including climbing ramps and stairs, balancing, stooping, kneeling, and crouching, and never climbing ladders, ropes, or scaffolds or crawling. (Tr. at 433.) He further opined that Claimant should avoid concentrated exposure to vibration and hazards. (Tr. at 435.)

Claimant first saw Dr. Clifford Carlson, M.D., on September 24, 2008, for complaints of back pain. (Tr. at 16, 487-93.) Claimant reported daily back pain and spasms, as well as right leg and left buttock pain. (Tr. at 16, 489.) Dr. Carlson noted that Claimant was in moderate distress and stood with his right shoulder and right hip high. (Id.) Claimant walked with a good gait, but did not heel or toe walk.

15

(Id.) Lumbar flexion was 70 degrees with back pain and extension was 20 with back pain. (Id.) Straight leg raising was positive at 40 degrees bilaterally, with back pain. (Id.) On October 22, 2008, Claimant reported back radiating down the left side and right leg. (Tr. at 16, 490.) He continued to walk with a good gait, exhibited good strength of the lower extremities, and intact deep tendon reflexes. (Id.) Dr. Carlson continued him on Lortab 10mg, three times a day. (Id.) On November 19, 2008, Claimant reported increased pain in cold weather, but noted no pain at the time of the exam. (Tr. at 16, 491.) Exam and treatment remained the same. (Id.) In December 2008, Claimant again complained of increased back pain in cold weather. (Tr. at 16, 492.) Physical findings essentially remained the same. (Id.)

On December 17, 2008, Dr. Carlson conducted an evaluation of Claimant at the request of Claimant's attorney. (Tr. at 16,. 475-86.) Claimant reported constant back pain, aching in nature, with nausea. (Tr. at 16, 479.) He complained of pain radiating down his right leg to the top of the ankle and into his foot. (Id.) He also reported sleep difficulty and falling spells when his left leg pops. (Id.) His medications included Avalide, Cymbalta, Buspar, and Lortab 10mg. (Id.) On exam, Dr. Carlson noted that Claimant stood with his right hip and shoulder high and lower lumbar vertebral and right sacroiliac tenderness. (Tr. at 16, 480.) Claimant walked flatfooted and would not heel or toe walk. (Id.) He had decreased dorsi flexion of the right hallux and decreased touch in the right L5 distribution. (Tr. at 16, 480-81.) He also had decreased pin sensation in the right L4-5 distribution. (Tr. at 16, 481.) Dr. Carlson diagnosed herniated central disc at L5-Sq central and to the left and status post two failed surgical interventions and fusion with residuals. (Id.)

Dr. Carlson opined that Claimant "is unable to work doing his past work and based on his age, education and work experience he is unable to engage in any substantial gainful activity by reason of medically determinable physical impairment is expected to last for greater than 12 months." (Tr. at 16, 481-82.) He assessed that Claimant could lift and carry up to 20 pounds frequently and occasionally, but

16

opined that he could sit only ten minutes before needing to change positions and stand for only five minutes. (Tr. at 16, 483-84.) He noted that Claimant would need to lie down at unpredictable intervals throughout the workday. (Tr. at 16, 484.) In support of this assessment, Dr. Carlson noted that Claimant had two failed surgical interventions, which left him with chronic lower back pain requiring him to lie down frequently. (Id.) Dr. Carlson further assessed occasional limitations in balancing, crouching, and kneeling, and never climbing, stooping, or crawling. (Id.) He further opined that Claimant's ability to reach, handle, feel, see, hear, and speak, were affected by his impairments. (Tr. at 16, 485.) Dr. Carlson noted that pushing and pulling would increase his lower back pain to an intolerable degree secondary to his two failed surgeries. (Id.) He concluded that Claimant's impairments would cause him to miss more than three days of work each month. (Tr. at 16, 486.)

The ALJ accorded little weight to Dr. Carlson's opinion that he could not do any work or stand, walk, and sit for more than four hours in an eight hour workday. (Tr. at 16.) The ALJ noted that Dr. Carlson's four treatment notes from September 2008, through December 2008, did not document or suggest the levels of functional restrictions as assessed by Dr. Carlson, as "one would expect to at least see reference made in a treating physician's prior notes." (Id.) The ALJ further noted that he "must also consider the possible biases that a treating physician may bring to a disability evaluation." (Tr. at 17.) In conclusion, the ALJ found that Dr. Carlson's assessed limitations were not supported by the medical evidence. (Tr. at 23-24.)

The Court finds that any error that the ALJ may have committed in noting an unsupported statement of bias on Dr. Carlson's part is harmless. This is because the Court finds the ALJ's decision to give little weight to Dr. Carlson's opinion for lack of support in the medical evidence is supported by substantial evidence. Though Claimant takes issue with the ALJ's failure to particularize inconsistencies between Dr. Carlson's opinion and his treatment notes, the inconsistencies are readily apparent in the

ALJ's summary of the evidence. For instance, as the Commissioner points out, Dr. Carlson, as well as

Dr. Jones, treated Claimant conservatively with only medications, which Claimant reported helped his

pain. Overall, Claimant exhibited a good gait and strength in the lower extremities, with a slight decrease

in range of motion. As the ALJ noted, Dr. Carlson treated Claimant on only four occasions prior to his

RFC assessment. His severe restrictions were contrary to those assessed by the state agency reviewing

physicians and those assessed by his former physician, Dr. Jones, who treated Claimant for about three

years. Neither Dr. Jones nor Dr. Carlson imposed any restrictions on Claimant during the course of their

treatment. The ALJ based his RFC assessment on the substantial evidence of record, including the

testimony of the VE. As the Commissioner notes, the ALJ accommodated Claimant's physical

impairments by assessing postural and environmental limitations. Despite Claimant's reports of the need

to lie down during the workday, none of the medical providers or evaluators found the need for such a

condition. Accordingly, the Court finds that the ALJ's physical RFC assessment is supported by

substantial evidence.

B. Mental.

   Claimant alleges that the ALJ erred in according Dr. Riaz's opinion little weight. (Document No.

17 at 11-12.) He notes that Dr. Riaz and Ms. Jarrell found that Claimant would have difficulty interacting

with supervisors and co-workers. (Id. at 12.) Additionally, Claimant asserts that the ALJ erred in finding

Dr. Riaz's observation of psychomotor retardation a one time incident because Dr. Jones never reported

such activity. (Id.) Third, Claimant asserts that the ALJ erred in noting that Dr. Jones made no mention

of mental complaints at the time of Dr. Riaz's evaluation. (Id.) Finally, Claimant asserts that the ALJ

erred in rejecting Dr. Riaz's assessed severity of Claimant's mental impairments, simply because Dr.

Jones did not suggest such significant severity. (Id. at 13.)

   In response, the Commissioner asserts that the ALJ properly assessed Claimant's mental RFC,

18

as it was supported by the two state agency reviewing psychologists. (Document No. 20 at 12-13.) The Commissioner further asserts that the ALJ accounted for Claimant's work-related mental limitations that were supported by the record by restricting him to simple, routine, repetitive, unskilled work involving only occasional interaction with the general public. (Id. at 13.) In Reply, Claimant asserts that despite the Commissioner's brief, the ALJ failed to identify any reason as to why Dr. Riaz's opinion was lacking. (Document No. 21 at 3.)

As discussed above and as the ALJ found, Dr. Jones's records revealed intermittent periods of increased anxiety, but did not indicate any inability to work based on anxiety. (Tr at 14.) The WV DHHR referred Claimant to Dr. Riaz U. Riaz, M.D., on August 15, 2007, for a psychiatric evaluation to determine his eligibility for a medical card. (Tr. at 14, 339-42.) Claimant complained of nervousness, anxiety, and depression. (Tr. at 14, 339.) He reported that he was irritable and upset easily, cried easily, preferred to be left alone, and had anxiety attacks. (Id.) He also reported that he could neither concentrate nor stand crowds. (Tr. at 14, 340.) On mental status exam, Dr. Riaz noted that Claimant exhibited poor eye contact, had moderately severe psychomotor retarding, and appeared depressed, anxious, tremulous, shaky, and in pain. (Id.) He cried, changed positions in his seat, and had difficulty sitting and standing during the interview. (Id.) His affect was labile and his mood was depressed, sad, and anxious. (Tr. at 14, 341.) He reported feelings of worthlessness, hopelessness, and uselessness all the time due to his inability to work. (Id.) Claimant reported occasional suicidal thoughts with one attempt a year ago by cutting his wrists. (Id.) He felt that people talked about him, were against him, and watched him. (Id.) Dr. Riaz opined that his recent and remote memory was good, insight was not present, judgment was present, and his concentration and attention was poor. (Id.)

Claimant reported his activities to include self care, reading, watching television, visiting relatives, and attending church sometimes. (Id.) He indicated that he did not cook, clean, shop, drive, or

visit friends or neighbors. (Id.) Dr. Riaz assessed major depressive disorder, severe, chronic; panic disorder; and a GAF of 54.[3] (Id.) Dr. Riaz opined that Claimant had a "combination of physical and emotional problems that render[ed] him incapable of gainful employment." (Tr. at 16, 342.) He further opined that Claimant would be unable to interact appropriately with co-workers and supervisors, would be unable to perform repetitive tasks at a sustained level, and was not a suitable candidate for vocational rehabilitation. (Id.)

On September 23, 2007, Claimant underwent a psychological consultative examination by Teresa E. Jarrell, M.A. (Tr. at 15, 343-51.) On mental status exam, Ms. Jarrell observed that Claimant was alert, attentive, and cooperative. (Tr. at 15, 347.) He appeared to have a "serious attitude" in attempting to answer the questions asked of him and related in a polite manner, though he was tremulous, moderately anxious, and mildly depressed. (Id.) His speech was not spontaneous, but normal in rate and volume; his mood was moderately anxious and mildly depressed; his affect was restricted; and his thought process was generally linear with content relevant to the questions asked of him. (Id.) Claimant was mildly paranoid delusional, his insight was mildly deficient, as was his judgment. (Id.) Claimant endorsed prior suicidal thoughts, but reported none at the present time. (Id.) His immediate memory was within normal limits, his recent memory was severely deficient, and his remote memory was mildly deficient. (Id.) Ms. Jarrell observed mild psychomotor agitation. (Id.)

Ms. Jarrell assessed major depressive disorder, recurrent, severe, without psychotic features; generalized anxiety disorder; and a pain disorder associated with both psychological factors and a general medical condition. (Tr. at 15, 348.) She assessed his prognosis as poor based on the combination of

---

[3] The Global Assessment of Functioning ("GAF") Scale is used to rate overall psychological functioning on a scale of 0 to 100. A GAF of 51-60 indicates that the person has moderate symptoms, or moderate difficulty in social, occupational or school functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 32 (4th ed. 1994).

physical and psychiatric symptoms. (Id.) She further assessed his social functioning was moderately deficient, his persistence was mildly deficient, and his pace was variable throughout the evaluation. (Tr. at 15, 349.) Nevertheless, Ms. Jarrell assessed that Claimant was capable of managing his benefits if awarded. (Id.)

Dr. Rosemary L. Smith, Psy.D., completed a form Psychiatric Review Technique Form on October 1, 2007. (Tr. at 360-73.) Dr. Smith opined that Claimant's affective, anxiety-related, and somatoform disorders resulted in no more than mild limitations of activities of daily living and moderate restrictions in maintaining social functioning, concentration, persistence, or pace. (Tr. at 360, 370.) She further opined that Claimant had experienced no episodes of decompensation of extended duration. (Id.)

Claimant first sought treatment at Southern Highlands Community Mental Health in October 2007, at the request of Dr. Riaz. (Tr. at 439-42, 461-74.) On June 9, 2008, he exhibited a depressed mood and anxious affect, appropriate speech, adequate sleep, poor energy, normal stream of thought, appropriate content of thought, fair insight and judgment, fair recent and remote memory, and was fully oriented. (Tr. at 15, 470.) Claimant was assessed with major depressive disorder, generalized anxiety disorder, chronic pain disorder, and rule out bipolar. (Id.) His medications included Cymbalta, Seroquel, and Trazadone. (Id.) Claimant continued treatment through February 11, 2008, with essentially the same complaints, findings, and diagnoses. (Tr. at 15, 462-74.)

Dr. Debra Lilly, Ph.D., completed a further Psychiatric Review Technique Form on May 8, 2008. (Tr. at 443-56.) Dr. Lilly essentially formed the same functional limitations opinion as did Dr. Smith. (Tr. at 443, 453.) She further assessed that Claimant was moderately limited in his ability to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities with a schedule, maintain regular attendance, be punctual within customary tolerances; interact appropriately with the general public; and complete a normal workday and workweek without

21

interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. at 457-59.) Dr. Lilly opined that Claimant retained "the ability to learn and perform simple, unskilled, work-like activities that do not require frequent contact with the general public or high production. (Tr. at 459.)

The ALJ gave little weight to the opinions of Dr. Riaz, noting that his conclusions regarding interaction with supervisors and co-workers were based solely on Claimant's self-reports. (Tr. at 18.) Additionally, he noted that Dr. Riaz's report of psychomotor retardation, observed on only one occasion, was inconsistent with Dr. Jones's treatment notes over a three year period of time. (Id.) The Court finds that the ALJ's mental RFC assessment is supported by substantial evidence. Though Dr. Jones was not a treating mental health professional, he continued to prescribe Xanax for Claimant's anxiety, but his treatment notes did not even suggest the severe level of mental health deficits as did Dr. Riaz. The ALJ noted that Dr. Riaz was not a treating mental health professional and observed Claimant on only one occasion. His opinions were inconsistent with the opinions of the state agency psychologists and were inconsistent with Dr. Jones's three year history of observations of Claimant. Moreover, Dr. Riaz's and Ms. Jarrell's findings were inconsistent in that he assessed good memory and poor concentration and attention and she assessed severely deficient recent memory. (Tr. at 21.) Ms. Jarrell likewise examined Claimant on only one occasion. (Id.) Dr. Jones however, did not report any marked limitations in concentration. (Id.) Accordingly, the Court finds that Dr. Riaz's opinion is inconsistent with the longitudinal treatment of Dr. Jones and is based in part on Claimant's self-reports. The ALJ accommodated Claimant's mental impairments in limiting him to performing simple, routine, repetitive job tasks with no more than occasional interaction with the general public. (Tr. at 23.) Consequently, the ALJ's mental RFC assessment is supported by substantial evidence.

2. <u>Pain and Credibility Assessment.</u>

Finally, Claimant alleges that the ALJ erred in assessing his credibility. (Document No. 17 at 9, 13-15.) Specifically, Claimant contends that the ALJ failed to evaluate his back pain. (<u>Id.</u> at 9.) Claimant asserts that the ALJ found that Claimant had a severe impairment relating to his back, but did not identify the back impairment. (<u>Id.</u>) Consequently, Claimant maintains that it is unknown whether the ALJ considered Claimant's chronic back pain. (<u>Id.</u>) Claimant asserts that it was error for the ALJ to fail to evaluate the pain separately and distinctly. (<u>Id.</u>) He also asserts that the ALJ improperly noted that (1) Claimant's need to have stitches in his head when he fell was not documented in the record; (2) treatment notes failed to reflect instructions that he lie down during the day; (3) Claimant was not prescribed a back brace and a cane for ambulation, (4) Claimant's reports of legs shaking and inability to stand for any period of time was not documented in the record; and (5) Claimant told a psychologist of his anger issues and need to hit walls, which resulted in boxer fractures in his hands. (<u>Id.</u> at 13-15.)

Contrary to Claimant's argument, the Commissioner asserts in response that the ALJ specifically stated in her decision that Claimant's primary complaints of disability were chronic back pain and muscle spasms. (Document No. 20 at 12.) The ALJ noted in her decision however, that the issue was not whether Claimant had pain and symptoms, but whether the pain was so severe that it was disabling. (<u>Id.</u>) Furthermore, Claimant notes that the state agency reviewing physician noted that Claimant's limitations were based in part on the combination of back and neck pain, and range of motion deficits. (<u>Id.</u>) Consequently, the ALJ acknowledged Claimant's pain also in assessing the weight given to the stage agency opinions. (<u>Id.</u>) In reply, Claimant asserts that the ALJ's two references to pain does not support an argument that she took pain into consideration in reaching her findings. (Document No. 21 at 3.)

A two-step process is used to determine whether a claimant is disabled by pain or other symptoms. First, objective medical evidence must show the existence of a medical impairment that

reasonably could be expected to produce the pain or symptoms alleged. 20 C.F.R. §§ 404.1529(b) and 416.929(b) (2009); SSR 96-7p; See also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). If such an impairment is established, then the intensity and persistence of the pain or symptoms and the extent to which they affect a claimant's ability to work must be evaluated. Id. at 595. When a claimant proves the existence of a medical condition that could cause the alleged pain or symptoms, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative. Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (2009). Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:
>
> (i) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>
> (vi) Any measures you use or have used to relieve your pain or other symptoms

24

(e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2009).

SSR 96-7p repeats the two-step regulatory provisions:

First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities.  For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). SSR 96-7p specifically requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" in assessing the credibility of an individual's statements. Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the Regulations.  A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(c) and 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of

25

an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

The ALJ noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms, and credibility. (Tr. at 21-22) The ALJ found at the first step of the analysis that Claimant's "medically determinable impairments could reasonably be expected to produce pain and other symptoms." (Tr. at 22.) Thus, the ALJ made an adequate threshold finding and proceeded to consider the intensity and persistence of Claimant's alleged symptoms and the extent to which they affected Claimant's ability to work. (Tr. at 21-23.) At the second step of the analysis, the ALJ concluded that "the severity of these symptoms, as alleged by the [C]laimant, and the effect on the [C]laimant's ability to work, are not fully supported by objective medical evidence alone." (Tr. at 22.)

In assessing Claimant's pain, the ALJ properly noted Claimant's reports of pain and summarized the medical evidence of record pertaining to his pain. Thus, the Court finds Claimant's allegation that the ALJ failed to consider Claimant's pain is without merit. Regarding the assessment of Claimant's credibility, the ALJ found several inconsistencies in the record, which detracted from Claimant's credibility. (Tr. at 22.) She noted that the record failed to reflect records of stitches to his head, the need

to lie down during the day to relieve pain, prescribed use of a back brace and cane, shaking legs, and boxer fractures to his hands. (Id.) Though Claimant asserts that his treating physician did not need to tell him to lie down if he needed to, it is a factor in assessing Claimant's credibility that he never reported to his physicians of the need to lie down. Though the ALJ may have mistakenly not acknowledged certain references in the record regarding stitches and shaking legs, such error is harmless. The severity of Claimant's alleged limitations and pain simply is not supported by the evidence of record, including his reported activities. Claimant exhibited minimal muscle spasms, but overall had good motor strength and range of motion. Thus, despite his pain, there was no evidence to support the degree of his reported severe limitations and pain. He reported that his pain was relieved with medication. Though Claimant used a back brace and cane for ambulation, there was no record of a physician prescribing such assistive devices. Accordingly, the Court finds that the evidence of record does not support the alleged severity of pain and limitations as reported by Claimant and that the ALJ's pain and credibility assessment is supported by substantial evidence of record.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence.  Accordingly, by Judgment Order  entered this day, the Plaintiff's Motion for Judgment on the Pleadings (Document No. 16.) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Document No. 20.) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED**, and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to provide copies of this Memorandum Opinion to counsel of record.

.       ENTER: March 31, 2011.

R. Clarke VanDervort
United States Magistrate Judge